*819 OPINION OF THE COURT
Renee R. Roth, S.
A dispute between the nominated executors in a proceeding to probate the will of Reginald Lewis Tackley raises a novel issue which requires construction of the statute governing commissions of executors. Specifically, the question is whether testator’s written acknowledgment that certain disclosures were made to him (as contemplated by section 2307-a of the Surrogate’s Court Procedure Act) must include language added in 2004. The answer will determine whether one of the nominated executors, who drafted the propounded instrument, is entitled to full commissions or only one half of such commissions (SCPA 2307-a [5]).
Mr. Tackley died on March 1, 2006, at the age of 92, survived by two nephews. Under his will, which was executed on February 4, 2006, testator gave most of his approximately $800,000 estate to his life partner and named a friend and the lawyer who drafted the instrument as executors.
In a separate instrument (the disclosure statement), signed and witnessed on the date the will was executed, testator acknowledged that he had been apprised of certain options and consequences relating to his appointment of his executors. Such statement has been submitted by the drafter as the basis for her claim to full commissions under SCPA 2307-a. Her nominated cofiduciary maintains, however, that the statement fails to satisfy the requirements of such statute and that the drafter is therefore limited to receiving one half the usual statutory commissions as an executor.
In relevant part, section 2307-a requires specified “disclosure [s]” to the testator when the drafter of a will is named executor. As outlined in subdivision (1) of the statute, entitled “Disclosure,” such disclosures alert the testator to the fact that any competent person may serve as executor, i.e., that it is not necessary to name a lawyer; that an executor is entitled to be paid commissions for serving as fiduciary; and that a lawyer who is appointed executor and also serves as counsel in relation to the estate will be entitled to legal fees as well as executor’s commissions.
Subdivision (3) of the statute presents a “[m]odel[ ] of acknowledgment of disclosure[s]” (the model). Until November 2004, such model simply tracked the disclosures outlined in subdivision (1). Effective as of November 16, 2004, *820 however, the following was added to the acknowledgments included in the model: “(iii) absent execution of this disclosure acknowledgment, an attorney who serves as an executor shall be entitled to one-half the commissions . . . she would otherwise be entitled to receive” (SCPA 2307-a [3] [a] [iii] [emphasis added]).
Finally, subdivision (4) of the statute, entitled “Compliance,” provides that a writing “conforming] or substantially conforming] to [the] model in subdivision 3 . . . shall be deemed [in] compliance.”
The disclosure statement signed by testator closely tracked the language of the model except that such statement did not include the above portion of the model added in 2004 as clause (iii). In other words, testator did not acknowledge having been told that his signing such instrument would result in a cost to his estate (i.e., by enabling the drafter to claim full executor’s commissions). The nominated executor contends that such omission prevents the statement from being in “compliance” under subdivision (4).
Thus, the issue before the court is whether the disclosure described in clause (iii) of the model (the clause [iii] disclosure) must be included in a written acknowledgment under section 2307-a. Such issue cannot be resolved simply by referring to the language of the statute, which is not entirely clear on the point. On the one hand, subdivision (1) does not expressly include the clause (iii) disclosure as an element of the disclosure required by the statute. On the other hand, subdivision (4) pegs compliance to whether an acknowledgment “conforms or substantially conforms” to the model. Accordingly, to determine the Legislature’s intent with respect to the clause (iii) disclosure, it is necessary to review the legislative history of the statute.
Section 2307-a was enacted in 1995 (L 1995, ch 421, eff Aug. 2, 1995) as the outgrowth of a longstanding concern (reflected in case law such as Matter of Weinstock, 40 NY2d 1 [1976], and its progeny) that the will-drafting process was an opportunity for a less than scrupulous lawyer to insinuate himself into a lucrative fiduciary appointment (thereby violating the ethical canon that “[a] lawyer should not consciously influence a client to name him as executor . . . in an instrument” [Code of Professional Responsibility EC 5-6, quoted in Matter of Weinstock, supra]). In addressing such problem, the legislators concluded *821 that the client’s written acknowledgment of disclosures was the most reliable way to confirm that the designation of the drafter as executor was the product of the client’s knowing choice rather than the lawyer’s self-serving draftsmanship (see Assembly Mem in Support of Legislation [S 3195-A/A 5491-A], Bill Jacket, L 1995, ch 421). Obviously, by reducing the executor’s commissions if the drafter does not secure the client’s signed statement confirming the fact of such disclosures, the statute gives the drafter impetus to disclose.
The language added to the model in 2004 as clause (iii) of subdivision (3) (a) was only a part of the amendment to the statute enacted at that time (L 2004, ch 709). It is noted that the memoranda, reports and letters comprising the Bill Jacket focus only on another aspect of such amendment that is unrelated to the present issue (i.e., a requirement that the written acknowledgment be contained in an instrument separate from the will) (Bill Jacket, L 2004, ch 709).
Nevertheless, there are several factors that support the construction advanced by the nonlawyer executor. First, there is the statute’s underlying objective to level the playing field between lawyer and client in an area in which their personal interests conflict, but as to which (typically) only the lawyer is familiar. In such light, it is only reasonable to read the clause (iii) disclosure as implicit in subdivision (1), since the client’s informed understanding of the ramifications of signing the disclosure statement (which benefits the drafter, at the expense of the client’s estate) is arguably fundamental to such legislative purpose. Moreover, a contrary construction would require the conclusion that the clause (iii) disclosure was gratuitously inserted into the statute and can for all practical purposes be ignored. But such conclusion would be contrary to the basic canon of construction “that every provision of a statute was intended to serve some useful purpose” (Matter of Tonis v Board of Regents of Univ. of State of N.Y., 295 NY 286, 292 [1946]). Thus, the Legislature would appear to have intended “compliance” under subdivision (4) to be measured by reference to the model in all of its parts, including the clause (iii) disclosure. It would further appear that by requiring under subdivision (4) “substantial ] conform[ity]” the Legislature provided for minor clerical error or stylistic variance, but not omission of any of the substance of the model.
*822 Based upon the foregoing, it is concluded that the disclosure statement at issue does not comply with section 2307-a. Accordingly, the drafter’s compensation as an executor shall be limited to one half the statutory commissions to which she would otherwise be entitled.